UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| DEXTER L. DAVIS | CIVIL ACTION NO. 14-3320 |
| VERSUS | JUDGE ROBERT G. JAMES |
| TOM VILSACK, ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

This is a lawsuit brought by *pro se* Plaintiff Dexter L. Davis ("Davis"), who is African-American, against Defendants Chris Beyerhelm, Willie Cooper, Brad Smith, and Steve Dooley, employees of the Farm Service Agency ("FSA"),[1] an agency of the United States Department of Agriculture ("USDA"). Davis alleges that Defendants racially discriminated against him when they refused to subordinate FSA's lien position in favor of a private bank, resulting in his inability to obtain additional financing. He asserts several theories of recovery against Defendants under 42 U.S.C. §§ 1983, 1985, 1986, 1988, and 2000(d), for fraud, under the Administrative Procedures Act ("APA"), under the Equal Opportunity Credit Act ("EOCA"), and under the Fifth and Fourteenth Amendments.

## I.    PROCEDURAL HISTORY

This case has a convoluted procedural history. Pending before the Court are multiple pleadings for consideration. On January 30, 2015, Defendants filed a "Motion to Dismiss, or in the Alternative for Summary Judgment" ("Defendants' Motion to Dismiss or for Summary

---

[1]Davis originally brought claims against Defendant Tom Vilsack, the United States Secretary of Agriculture, but voluntarily dismissed those claims. [Doc. No. 8].

Judgment") [Doc. No. 4].  Davis did not file a memorandum in opposition to the Motion to

Dismiss or for Summary Judgment.  On April 7, 2015, Magistrate Judge Hayes issued a Report

and Recommendation [Doc. No. 13], in which she recommends that the Court grant the Motion

to Dismiss as to Davis' claims of fraud, under 42 U.S.C. §§ 1983, 1985, 1986, 1988,  and 2000d,

under the Fourteenth Amendment, and under the APA.  As to his rights under the Fifth

Amendment, Magistrate Judge Hayes construed that claim, as well as his claims under § 1983

and the Fourteenth Amendment, as a *Bivens* action.  *See Bivens v. Six Unknown Named Agents

of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  She recommended that the Court grant

the alternative Motion for Summary Judgment and dismiss Davis' *Bivens* claim and his claim

under the EOCA based on the undisputed facts.[2]  Despite his lack of opposition to the motion, on

April 27, 2015, he filed objections to the Report and Recommendation [Doc. No. 14].[3]

---

[2] Because Davis failed to oppose the motion, Magistrate Judge Hayes had considered the facts as undisputed for purposes of summary judgment, although, as is proper, she had credited his well-pleaded allegations as true for the purpose of considering the Motion to Dismiss. [Doc. No. 13, p. 2 n.4].  Specifically, by failing to oppose the motion, Davis admitted that he had no evidence that Defendants' refusal to subordinate the lien was based on race.

[3]Davis' objections were due on April 24, 2015, but were not received by the Clerk of Court until April 27, 2015, and, thus, were untimely filed.  Davis suggests that his filing was timely because he placed the objections in the U.S. Mail on April 24th, and he does not have access to electronic filing. [Doc. No. 30, p. 5].  However, under Local Rule 5.7.03, "[a] document filed in paper form is deemed filed by the Court on the date the document is received by the clerk's office." Although Davis could have filed the objections with the Clerk of Court in person, he chose to mail his objections, and, thus, they were not filed until three days later when they were received by the Clerk.

While the Court understands that Davis is not an attorney, he is required to abide by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Louisiana in any lawsuit filed in this Court.  Those rules are available online, and Davis can obtain access to a computer at any local library.  Nevertheless, given the short delay in filing and Davis' lack of formal training, the Court has reviewed and considered his objections.

Additionally, on April 27, 2015, Davis filed his own Motion for Summary Judgment [Doc. No. 16].  After an extension of time to respond, on June 12, 2015, Defendants timely filed a memorandum in opposition to the Motion for Summary Judgment. [Doc. No. 33].  On August 3, 2015, Davis filed a reply memorandum in support of the Motion for Summary Judgment. [Doc. No. 37].

Finally, also on April 27, 2015, Davis filed a Motion for Leave of Court to File First Amended Complaint ("Motion to Amend") [Doc. No. 15].  Defendants opposed the motion. [Doc. No. 20].  Davis filed a reply in support of his motion to amend. [Doc. Nos. 21 & 24].[4] After review, on May 19, 2015, Magistrate Judge Hayes issued a Memorandum Order [Doc. No. 25] denying Davis' Motion to Amend.

On May 29, 2015, Davis timely appealed ("the Appeal") [Doc. No. 30] Magistrate Judge Hayes' Memorandum Order.  On June 12, 2015, Defendants filed a memorandum in opposition to the appeal. [Doc. No. 32].  On August 3, 2015, Davis filed a reply memorandum [Doc. No. 38] in support of his appeal.

Having fully considered the related arguments, evidentiary facts, and briefs on all of these pending pleadings, the Court DENIES Davis' Appeal and AFFIRMS Magistrate Judge Hayes' Memorandum Order, denying Davis leave to amend his Complaint.  The Court further ADOPTS the Report and Recommendation of Magistrate Judge Hayes[5] and for the reasons set forth therein

---

[4]Duplicative replies were filed.

[5]While the Court fully agrees with and adopts Magistrate Judge Hayes' analysis, given the extensive briefing on all these related pleadings after the issuance of the Report and Recommendation, the Court has NOT treated the facts as undisputed as Magistrate Judge Hayes did.  The Court has addressed any factual disputes which are supported by evidence in this Ruling.

and for those additional reasons set forth in this Ruling, GRANTS Defendants' Motion for

Summary Judgment.  Finally, the Court DENIES Davis' Motion for Summary Judgment.  Davis'

Complaint is hereby DISMISSED WITH PREJUDICE.

I.      LAW AND ANALYSIS

    A.      Appeal of Magistrate Judge's Non-Dispositive Order

        Given the potential effect on the other pending pleadings, the Court has first reviewed

Davis' Appeal of Magistrate Judge Hayes' Memorandum Order denying Davis' Motion to

Amend Complaint.  The Court's review is governed by 28 U.S.C. § 636(b)(1)(A).  Under that

statute, Magistrate Judge Hayes' Memorandum Order on this non-dispositive matter can be set

aside only if it is clearly erroneous or contrary to law.

        In that order, Magistrate Judge Hayes denied Davis leave to amend his Complaint

because amendment would be superfluous and redundant in part and otherwise futile.  By

amendment, Davis sought to correct the deficiencies Magistrate Judge Hayes found with his

various theories of recovery, to delete some claims, and to substitute other claims. However,

Magistrate Judge Hayes concluded that if the Complaint were amended as Davis proposes, his

voluntary dismissal of certain claims that fail as a matter of law was "superfluous." [Doc. No. 25,

p. 5].  She found his attempt to add other claims to be futile because the proposed theories of

recovery also failed as a matter of law and thus his amendment in this regard would be

"ineffective." *Id.*

        Although under Federal Rule of Civil Procedure 15(a)(2), the Court should "freely give"

leave to amend "when justice so requires," Davis is not entitled to amend his Complaint as a

matter of right.  The Court finds that Magistrate Judge Hayes' analysis and conclusions are

neither clearly erroneous nor contrary to law.  Indeed, the Court agrees with Magistrate Judge

Hayes that, in this case, Davis' proposed amendment would neither save the claims which are

legally deficient nor would the amendment add new theories under which he could legally

recover.  Finally, the additional facts offered to support his claim of racial discrimination are

already in the record in his other filings.  Therefore, Davis' appeal is DENIED, and Magistrate

Judge Hayes' Memorandum Order is AFFIRMED.[6]

### B.  Report and Recommendation on Defendants' Motion to Dismiss or for Summary Judgment

The Court has also considered Magistrate Judge Hayes' Report and Recommendation on

Defendants' Motion to Dismiss or for Summary Judgment.  When timely objections are filed to a

magistrate judge's report and recommendation on a dispositive motion, the Court conducts a *de

novo* review of the record.  FED. R. CIV. P. 72(b)(3).[7]

First,  the Court agrees with and ADOPTS Magistrate Judge Hayes' analysis with regard

to Davis' claims of fraud, under 42 U.S.C. §§ 1983, 1985, 1986, 1988, and 2000d, under the

Fourteenth Amendment, and under the APA.  Even after consideration of Davis' proposed

amendment discussed above and his additional allegations, the Court finds that Davis cannot

state a claim as a matter of law under these theories, nor under *Bivens* as construed and

considered by Magistrate Judge Hayes in the Report and Recommendation.  Thus, Defendants'

---

[6]As Magistrate Judge Hayes notes, however, the evidence which Davis submits in support of his claim of race discrimination has also been submitted with his objections to the Report and Recommendation and in support of his Motion for Summary Judgment.  The Court will, thus, review and consider any appropriate evidence in that context.

[7]Although Davis' objections were untimely, in light of his *pro se* status and in the interest of justice, the Court has conducted a *de novo* review.

Motion to Dismiss these claims is GRANTED, and the claims are all DISMISSED WITH PREJUDICE.

The Court has further considered Davis' remaining claims under the Fifth Amendment and the EOCA.  With regard to Davis' claim under the Fifth Amendment, as noted above, Magistrate Judge Hayes properly construed this claim, as well as his claims under § 1983 and the Fourteenth Amendment, as a *Bivens* action.

With regard to these claims, Magistrate Judge Hayes recommended that the Court grant Defendants' Motion for Summary Judgment.  Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable

6

inferences in its favor.  *Anderson*, 477 U.S. at 255.  However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

      1.     *Bivens*' Claims

      "Under Bivens, a person may sue a federal agent for money damages when the federal agent has allegedly violated that person's constitutional rights." *Brown v. Nationsbank Corp*., 188 F.3d 579, 590 (5th Cir. 1999) (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)).  In this case, Davis alleges that Defendants violated his Fifth Amendment rights and § 1983 by refusing to subordinate its lien because of his race. He can prove a *Bivens* violation by showing that Defendants intentionally discriminated against him on the basis of his race or that they selectively enforced the government policy at issue because of his race.

      In her Report and Recommendation, Magistrate Judge Hayes found that Davis failed to oppose Defendants' properly supported Motion for Summary Judgment.  Under Local Rule 56.2 and Fifth Circuit precedent, by failing to oppose the Motion for Summary Judgment, the facts set forth by Defendants, which were properly supported by evidence, were deemed undisputed and admitted.  These facts include the evidence that Defendants' decision was not based on his race. Therefore, Magistrate Judge Hayes found that summary judgment was appropriate.

      However, in his objections and with the filing of his own Motion for Summary Judgment, Davis now emphatically denies that he admitted the facts contained in the Report and

Recommendation.  With his Motion for Summary Judgment, Davis submitted his own

declaration; an affidavit and attached declaration from Roy J. Day ("Day"), a friend who worked

on his farm; a document from another individual, Floyd Hooker ("Hooker");[8]  and other

exhibits.[9]

Davis has a long history with the FSA (and its predecessor).[10]  He has received farming

loans through the FSA since 1984 and dealt with Defendants Dooley and Cooper prior to the

events giving rise to this lawsuit.[11]  Though Davis emphatically denied he admitted any facts, the

Court finds that Davis' declaration is generally consistent with the facts recounted by Magistrate

Judge Hayes.[12]  Thus, the facts set forth in the Report and Recommendation are hereby

incorporated by reference.

Davis does point out additional alleged facts.  According to Davis, he engaged in another

---

[8]The document signed by Hooker is titled "Affidavit,"but is not notarized.  Even so, the Court could properly consider Hooker's document as a declaration if he declared "under penalty of perjury that the foregoing is true and correct," as well as signing and dating the document.  *See* 28 U.S.C. § 1746.  However, the Hooker document is not signed under penalty of perjury.  Thus, is it not properly admissible in these proceedings.  Nevertheless, the Court has discussed its content in this Ruling because, even if it were properly admissible, it fails to raise a genuine issue of material fact for trial.

[9]Although these documents were provided with this Motion for Summary Judgment, the Court has considered the entire record in reaching a decision on the pending motions and appeal.

[10]FSA was previously known as the Farmers Home Administration.

[11]The Court does not recount Davis' entire loan history with the FSA, but has considered his history as background to this lawsuit in evaluating the pending motions for summary judgment.

[12]In his declaration, Davis states that he engaged in settlement negotiations with the FSA in "January of 2012," but this statement appears to be a typographical error. [Doc. No. 16-2, Davis Declaration, ¶ 4].

round of settlement negotiations with the USDA between the voluntary dismissal of his first

lawsuit, *Davis v. Vilsack*, 12-00818, and the filing of this lawsuit. [Doc. No. 16-2, Davis

Declaration, ¶ 5].  In the final paragraph, Davis declares in a conclusory fashion that he has

"experienced through the years, before and after a settlement by the USDA, that Agency officials

are reeked with retaliation, discrimination, animosity, and anger towards me due to my stand

against unfair lending practices.  I have experienced it at every level at the Department as the

record will show." [Doc. No. 16-2, Davis Declaration, ¶ 6].

Davis' witness, Day, declares that he "would go to the [FSA] Office with [Davis] and

noticed that white farmers would just walk into the office, pass the front desk to see the loan

officer and walk out with a check.  These experiences I witnessed myself.  All the time while

[Davis] was still waiting to meet with the loan officer to get a loan." [Doc. No. 16-2, Day

Affidavit, ¶2].  In the declaration attached to his affidavit and which was submitted to the Office

of the Assistant Secretary for the Civil Rights ("OASCR") of the USDA, Day admits that he only

knows what Davis told him regarding the denial of his subordination request and subsequent

denial of his appeal. [Doc. No. 16-2, Day Declaration to OASCR, p. 3].  When asked if he

anything else to add, Day recounted the history of his friendship and work relationship with

Davis.  He then reiterated the same story detailed in his affidavit.  However, in the declaration, he

says that "**[o]ne time**," while he and Davis were in the lobby, a white farmer "came in the lobby,

walked pass [sic] the front desk, went to loan officer's office and came out with a check and then

he left." [Doc. No. 16-2, Day Declaration to OASCR, p. 4 (emphasis added)].  Later, he explains

that, "during the 80s," the FSA treated Davis "like he was a child," requiring him to get a check

to purchase farming supplies, rather than just giving him the loan money directly as they

9

allegedly did to white farmers.

Davis' witness, Hooker, also provided a statement to OASCR in 2012.  Assuming this statement is admissible,[13]   Hooker admits that his knowledge of the events giving rise to this lawsuit are based on what Davis told him.  When asked if he had anything else to add, Hooker advised the investigator to "check the records" for statistics comp[iled] by USDA's Civil Rights Action Team . . . in its February 1997 report." [Doc. No. 16-2, Hooker Document, p. 4].  Hooker then cites the alleged statistics from 1997.

However, the evidence is insufficient to raise a genuine issue of material fact for trial that Defendants denied his subordination request based on his race or that he was the victim of selective policy enforcement.  Davis' friends admittedly have no personal knowledge of the events at issue,[14] but relied on his statements to them.  Further, both Davis' statements and those of his friends that he suffered discrimination constitute inadmissible speculation, supposition, theory, opinions, and beliefs, largely based on long ago events.

To the extent that Davis attempts to rely on the USDA's history of racial discrimination against black farmers and his own history of complaints against the FSA, he has also failed to raise a genuine issue of material fact for trial.  The Court is aware of the history of discrimination against black farmers.  *See Pigford v. Glickman*, 185 F.R.D. 82, 103-04 (D.D.C. 1999) (in approving a settlement agreement between black farmers and the USDA, the district court found

---

[13]As previously noted, this document does not appear to meet the requirements for an affidavit or a declaration.  Thus, it is inadmissible hearsay.

[14]Under Federal Rule of Evidence 602, a witness may testify to a matter only if he has "personal knowledge."  Day and Hooker admit that they do not have personal knowledge of the relevant events in this case.

that there was "strong evidence that the USDA discriminated against African American farmers. The reports of the Inspector General and the Civil Rights Action Team provide a persuasive indictment of the civil rights record of the USDA and the pervasive discrimination against African American farmers."). Likewise, it is undisputed that Davis has made and settled prior complaints of discrimination against the FSA. However, neither of these settlements raise a genuine issue of fact that Davis suffered discrimination in this instance.[15] To accept Davis' arguments, the Court would have to presume that because the USDA and/or the FSA settled claims of discrimination in the 1990s, it follows that Davis is a victim of discrimination in Defendants' 2011 denial of the requested subordination. The Court cannot make that leap based on events of almost twenty years ago.

Finally, Davis offers a new argument in support of his constitutional claims, contending that he was denied due process because the FSA failed to comply with its own regulations under 7 C.F.R. § 764.53 to notify Davis of its decision within 60 days after receiving his completed subordination application. Davis' application was submitted on December 2, 2010, but he did not receive a response until February 24, 2011, 84 days later and, according to Davis, only after he requested a response. The Court finds it doubtful that a 24-day delay in a response to his request for subordination would even rise to the level of a constitutional violation under these circumstances. Davis did receive a response, he appealed the decision, and he was able to bring this action, so he received due process. Nevertheless, even if this delay was of constitutional proportions, Davis has failed to present any evidence that Defendants' delayed response was

---

[15]Indeed, the fact that the FSA or USDA chose to settle with Davis previously does not constitute any legal evidence that he was the victim of discrimination. There are many reasons why a party may settle without admission of guilt or liability.

discriminatory.  By Davis' own account, the parties were engaged in settlement negotiations in an attempt to resolve both this complaint and a prior complaint.  It was only after the negotiations failed that Davis requested a response.  He then received one.

The Court finds that, even after consideration of Davis' additional facts, evidence, and arguments, Defendants are entitled to summary judgment on his *Bivens* claim.

### 2.    EOCA Claims

Magistrate Judge Hayes set forth the law on the ECOA in her Report and Recommendation:

> The ECOA makes it unlawful for any creditor "to discriminate against any applicant, with respect to any aspect of the credit transaction on the basis of race. . . ."  15 U.S.C. § 1691(a)(1).  To recover under the ECOA, a plaintiff must establish a *prima facie* case of discrimination by showing that "(1) he is a member of a protected class; (2) that he applied for and was qualified for a loan/credit; (3) despite his qualifications, plaintiff's loan application was denied or plaintiff was denied credit; (4) the lender continued to approve loans for applicants with qualifications similar to those of the plaintiff."  *Curley v. JP Morgan Chase Bank NA*, 2007 WL 1343793, at *4 (W.D. La. May 7, 2007) (citing *Bhandari v. First Nat. Bank of Commerce*, 808 F.2d 1082, 1090-91 (5th Cir. 1987)); *Nia Home Health Care, Inc. v. Whitney Nat. Bank*, 1998 WL 171522 (E.D. La. 1998); *Moore v. U.S. Dept. of Agric.*, 857 F. Supp. 507 (W.D. La. 1994), vacated on other grounds by *Moore v. U.S. Dept. of Agric.*, 55 F.3d 991 (5th Cir. 1995). . . .
>
> If the plaintiff successfully demonstrates a prima facie case, the defendant must "respond by producing a legitimate, nondiscriminatory rationale for its decision."  Curley, 2007 WL at *5.  If the defendant satisfies its burden, the plaintiff must "raise a genuine issue of material fact as to whether the [defendant's] proffered reason was merely a pretext for discrimination." *Id.* (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 68

[Doc. No. 13, pp. 12-13].

In the Report and Recommendation, Magistrate Judge Hayes concluded that even if Davis could meet his *prima facie* burden, Defendants "satisfied their burden of producing evidence to support a legitimate, nondiscriminatory reason for rejecting [Davis'] subordination request."

[Doc. No. 13, p. 13].  Defendants stated that they refused his request "because he was not eligible for a subordination under the requirements set forth in 7 C.F.R. 765.205 and FSA Handbook 4-FLP."  *Id.*

In his filings, Davis does not appear to contest the validity of the cited regulation and guidance in the FSA Handbook or that Defendants relied on the regulation and guidance in denying his request for subordination.  Instead, he argues that Defendants and Magistrate Judge Hayes failed to consider the effect of 7 C.F.R. § 764.53(c) and "regulation § 1951 S Servicing Policies." [Doc. No. 14, p. 13].  Thus, the Court assumes, for purposes of summary judgment, that Davis contends that Defendants' failure to apply this regulation and servicing policies constituted evidence of pretext.  That is, Defendants' contention that they could not grant his subordination request was false because there were available regulations and servicing policies which permitted him relief.  *See Cooley v. Sterling Bank*, 280 F. Supp.2d 1331, 1339 (M.D. Ala. 2003) (in an ECOA case, the court applied the *McDonnell-Douglas* burden shifting framework; a plaintiff's prima facie case "combined with sufficient evidence to find that the defendant's asserted justification is false, may permit the trier of fact to conclude that the defendant unlawfully discriminated against plaintiff.").

First, 7 C.F.R. § 764.53(c) sets forth a sixty-day time period for a response to Davis' request for a loan (or, in this case, a subordination).  However, for the same reasons discussed above, it is unclear how FSA's alleged late notification to Davis constitutes an ECOA violation or evidence that Defendants' denial of the subordination request under 7 C.F.R. § 764.53 constituted pretext for discrimination.  Likewise, it is unclear how Defendants' alleged failure to offer Davis servicing options on his delinquent account provides evidence of pretext in the denial

of his request for subordination.[16]  Even if servicing options were available in the context of settlement of Davis' prior claim, but not otherwise available, Davis has failed to show how this is evidence of pretext.

Thus, for the reasons set forth in Magistrate Judge Hayes' Report and Recommendation and for these additional reasons, Defendants are also entitled to summary judgment on Davis' ECOA claim.

> ### C.     Davis' Motion for Summary Judgment

For the reasons previously discussed, the Court will grant Defendants' Motion to Dismiss or for Summary Judgment and dismiss all Davis' claims.  Accordingly, Davis' Motion for Summary Judgment is DENIED.

## III.     CONCLUSION

For the foregoing reasons, Davis' Appeal [Doc. No. 30] is DENIED, and the Magistrate Judge's Memorandum Order [Doc. No. 25], denying Plaintiff leave to amend his Complaint, is AFFIRMED.   The Report and Recommendation of the Magistrate Judge [Doc. No. 13] is ADOPTED by the Court, to the extent set forth above, and Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment filed by Defendants [Doc. No. 4] is GRANTED.   Plaintiff's Complaint is DISMISSED WITH PREJUDICE.   Finally, Plaintiff's Motion for Summary Judgment

---

[16]Davis did not challenge the FSA's alleged failure to provide him with loan servicing and/or debt restructuring options at the time he became delinquent, and, thus, that claim is not properly before the Court.  The issue before the Court at this juncture is whether the FSA discriminated against him in the denial of his subordination request, and these unsubstantiated allegations about the FSA's failure to inform him of loan servicing options is not relevant.  Davis does not dispute that his account was delinquent and has not offered sufficient evidence to raise a genuine issue of material fact for trial that Defendants' reason for denying the subordination is pretextual.

[Doc. No. 16] is DENIED.

MONROE, LOUISIANA, this 21st day of August, 2015.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

15